Gibson, J.
The Trial Judge set aside the plaintiff’s verdict in this negligence action and dismissed the complaint, on the ground that freedom from contributory negligence had not been demonstrated, even upon application of the rule of Noseworthy v. City of New York (298 N. Y. 76), as extended to amnesia cases by our decision in Schechter v. Klanfer (28 N Y 2d 228). The Appellate Division affirmed, two Justices dissenting. Negligence on defendants’ part was clearly shown, and that, indeed, in excessive degree. The narrow issue, then, is whether — absent any credible testimony as to the manner of the amnesiac plaintiff’s operation of his automobile—his *375 freedom from contributory negligence was reasonably inferred by the jury from the physical and temporal facts of the accident. We think that it was.
The accident occurred on a September morning, at a point on the New York State Thruway, near the Genesee Street overpass at Utica, when plaintiff’s small convertible collided with a tractor-drawn flatbed trailer of one of the defendants standing athwart the westbound lanes as the operator maneuvered this massive and cumbersome rig into a U-turn, and then part way into the median, under the guidance and direction of a construction contractor’s flagman. At the moment of impact, the tractor-trailer unit was, according to one defendant, unaccountably stopped, thus constituting a virtually implacable barricade. The extreme danger to oncoming traffic thus presented was increased by reason of the flatbed’s relatively low height and visibility.
The critical nature of the issue of contributory negligence is emphasized by the fact that the other elements in the case preponderate so heavily in plaintiff’s favor. Thus, his retrograde amnesia, due to brain damage sustained in the accident and involving complete loss of recollection of the accident and the events preceding it, is not disputed. Then, too, the defendants ’ negligence is not argued; and it is virtually conceded that contributory negligence is the sole issue. The defendant contractors’ two employee-eyewitnesses, who are also defendants, contradict each other in some respects; and their testimony in the particulars in which it is consistent — the vital elements of sight distances and time factors — is suspect in some respects, and in others, indeed, tends to support plaintiff as regards the issue of contributory negligence, rather than the contrary. We turn, then, to the proof.
On September 22, 1966, plaintiff, then 27 years old, left his home on East 86th Street in Manhattan at about 2:30 a.m., to proceed, alone, driving his Triumph convertible, to Syracuse via the New York State Thruway on the business of his employer, to keep a 10:00 a.m. appointment. At a little after 8:00 a.m. plaintiff had reached the Utica area, where the accident occurred. This point was 233.6 miles from the New York City line and was approximately 50 miles east of Syracuse, plaintiff’s intended destination.
*376 Defendant Robb, somewhat ahead of plaintiff and also traveling west, had been dispatched by his employer, defendant Ritangela, with his tractor flatbed rig to pick np a piece of heavy equipment and take it to Albany. This equipment was located across the mall on the shoulder of the eastbound lane.* The area had been under repair by defendants Ritangela and County Asphalt, Inc., and, according to the proof, ‘‘ was still in a state of repair as far as shoulders go, and cleanup work but there were no road cones or warning signs indicating that work was in progress or that any danger existed.
Robb pulled his rig to the far right side of the westbound lane in order to facilitate the U-turn he had to make to get across to the eastbound side. He waited along the right side of the road for a time, observed no traffic coming from behind, and then saw defendant McDougall, the defendant County Asphalt’s flagman, motion him on, whereupon he started across the westbound lane. As respects the operation of the unit from this point on, the driver Robb’s testimony differs somewhat from that of the flagman McDougall and is, indeed, self-contradictory in some respects. McDougall said that the rig blocked the inside or passing westbound lane and extended back into the outside westbound lane. Robb testified variously, that the ‘ ‘ front part was into the U turn ” and then that the tractor “was almost completely all into the east bound but his motor vehicle accident report states: ‘ ‘ Tractor was just entering median area when vehicle #2 struck the tractor near left rear wheel.” Rejecting, under the rule, the testimony that the tractor was “ almost completely ” into the eastbound lane and accepting the testimony that the “front part was into the U turn ” and the written report that the front part or tractor “ was just entering median area ”, it would follow that the 33-foot trailer extended across both westbound lanes, which aggregated 24 to 25 feet, and perhaps into the wide righthand shoulder from whence the tractor had been jockeyed into the highway.
The flagman McDougall testified that when he motioned Robb on there was no vehicle coming from the east and that after the rig had started across he looked again and saw nothing; *377 that he never observed plaintiff’s car until he heard it strike the trailer, the rig, for some unexplained reason, having stopped. Robb testified, in contradiction, that he was moving when he heard the crash and that then he came to a stop. McDougall said that he was to the east of the tractor-trailer, which would place him between it and the oncoming convertible, but Robb said that McDougall was to the west of the unit. McDougall said plaintiff’s car, which, as noted, was a small convertible, collided with the left rear portion of the trailer and bounced to the left and became wedged under the tractor. Neither McDougall ndr Robb had been given a copy .of the Rules and Regulations of the New York State Thruway by their employers and had not otherwise read them. As has been noted, no warning signs, cones or flares had been placed as a warning to oncoming traffic of the construction work in progress, of which this maneuver was part and parcel; and it seems too clear to require discussion that under the circumstances McDougall was stationed too close to the tractor-trailer to give timely and effective warning to oncoming traffic. Thus, there can be no doubt of defendants’ negligence, and there is serious question of the veracity of McDougall’s testimony that he saw nothing and heard nothing until the collision, unless he was indeed to the west of the unit, where Robb placed him, and unless, further, his view was for that or some other reason obstructed.
The Trial Judge assumed, and the respondents argue here, certain distance and visibility factors, which have no conclusive basis in the evidence, and in doing so attach to certain elusive and contradictory statements of interested parties a degree of credibility which the jury most certainly was not bound to adopt. Thus, because there was, under normal conditions, good visibility from the point of the accident easterly some 1,500 feet to an overpass just west of a slight curve and grade, it is assumed and argued that good visibility existed at the time of the accident, despite the testimony of both individual defendants that the weather was rainy, “ misty ’ ’ and “hazy” and that neither saw plaintiff’s car before he heard the crash. Further, the defendant contractors rely on measured distances to contradict their own reading of the testimony *378 of their employees and codefendants, which testimony is susceptible of differing interpretations. The tractor operator said that he saw “ [a] couple of hundred yards”; and the flagman, asked how far he saw when he looked to the east just before the accident, said, “A block and a half, two blocks” or, in feet, ‘ ‘ Approximately 500 feet”, and it was then that he was asked if he saw the overhead trestle and he replied, “ No, not too clear.” Worthy of some note is Bobb’s testimony that as he traveled west he first saw McDougall, the flagman, when he was but 300 feet away. Surely the jury was not bound to conclude, as defendants then argued and still contend, (1) that McDougall and Bobb could see all the way to the trestle; (2) that the measured distance to the trestle was 1,500 feet; and (3) that, therefore, plaintiff was bound to anticipate and observe from 1,500 feet away a massive barricade, but two feet high, extending across the highway; even though both the tractor operator, presumably of some experience, and the flagman, hired for the very purpose of observing and warning traffic, failed to see plaintiff’s car. McDougall and Bobb had every reason to anticipate and to observe, if they could, heavy traffic in Utica at eight o’clock on a September morning; plaintiff had no reason to expect that the highway would be blocked, just as though a massive barrier had suddenly been lowered upon it without prior warning. These factors, plus certain other inferences reasonably to be drawn with respect to plaintiff’s exercise of due care, are the critical ones and it would serve no useful purpose to delve into the hopeless confusion of defendants’ proof as to the stopping, waiting and manipulation of the tractor rig and the conflicting estimates of the pertinent speed and time factors.
In this state of the record, the Trial Judge in granting the motion to set aside the verdict and dismiss the complaint, held, in respect to contributory negligence, “ the difficulty * * * is not that [plaintiff] has offered less proof than is normally required, but that he has offered no proof”. Of course, there is no direct testimony as to plaintiff’s operation, but inferences favorable to him were properly drawn by the jury from the facts elicited from the defendants Bobb and McDougall themselves. The Trial Judge’s determination was necessarily *379 influenced by assumptions drawn by Mm wMch seem to us unwarranted. Thus, we fail to understand the basis for the statement: ‘ ‘ Visibility should therefore have been good, despite the fact that the day was variously described by defense witnesses as ‘ rainy, sprinkling,’ ‘ hazy,’ and ‘ not raining’”. This language follows the implicit but unvoiced assumption in the same paragraph that visibility was 1,516 feet; but, as has been noted, one witness testified to 500 feet and the other to 200 yards, and Robb, the operator of the westbound tractor-trailer, did not see McDougall, despite his distinctive flagman’s garb, until he was but 300 feet away. In general, the trial court’s opinion reflects its acceptance—which, in the light of the jury’s verdict, was clearly unwarranted-—of the testimony of the defendants Robb and McDougall in important particulars, even though these two differed between themselves. Thus, for example, credence and effect were given Robb’s testimony, unsubstantiated even by McDougall, that his four yellow clearance lights and two red lights in the rear were on, and even this without any evidence as to the visibility of these lights — obviously intended for warning normal traffic moving in the same or opposite direction-—-when the vehicles upon which they were placed stood broadside to traffic. At the Appellate Division, the majority adopted the trial court’s unjustified assumptions as to lights, distances and visibility and additionally, with no adequate basis, found that plaintiff was traveling at high speed.
The governing law need be outlined but briefly, so dependent is the determination upon the evaluation of the facts by the jury vis-a-vis the appraisals by the Trial Judge and the Appellate Division.
First of all, the determination of the issue of contributory negligence is, of course, almost exclusively a jury function. ‘ ‘ Indeed, the general softening of the rigidities of the doctrine of contributory negligence in New York may be seen in recent cases where the injured person is himself suing and thus has the burden of showing he was not negligent. The tendency is to treat it almost always as a question of fact (Orwat v. Smetansky, 22 N Y 2d 869; Luce v. Hartman, 6 N Y 2d 786; Schuvart v. Werner, 291 N. Y. 32; and the case of the *380 surviving injured plaintiff in Tedia v. Ellman, [280 N. Y. 124] supra).” (Rossman v. La Qrega, 28 N Y 2d 300, 306.)
In this case, two other factors serve to ameliorate even further the recognized harshness of the contributory negligence doctrine. First, the condition of amnesia indisputably sustained by plaintiff in consequence of the accident entitled him to recover upon a lower degree of proof than that required of a plaintiff competent to testify to the facts, that is, to succeed upon sustaining “ a lighter burden of persuasion ”, as we held in Schechter v. Klanfer (28 N Y 2d 228, 231, supra) in extending to amnesiacs the benefit of the rule of Noseworthy v. City of New York (298 N. Y. 76, supra).
Second, the highly dangerous condition created by negligence in an excessive degree and posing a sudden, not to be anticipated peril, reduced plaintiff’s burden of proof close to the vanishing point. It is sometimes helpful to recall fundamental doctrine, however trite the reiteration, and in this case the evaluation of the claim of contributory negligence quite naturally evokes the Palsgraf homily: “ The risk reasonably to be perceived defines the duty to be obeyed ”. (248 N. Y. 339, 344.) The comparison of the stopped flatbed to a massive barricade suddenly lowered in plaintiff’s path seems not unfair. Plaintiff’s contributory negligence in such a case must be measured by his opportunity to react, and there was little or no possibility of defensive action or avoidance, or so the jury could have found. In some cases, the situation created may be so dangerous and the negligence of the party creating it so extreme as to exclude any other proximate cause, thus vitiating acts of the other party which might under ordinary circumstances be appraised as contributory negligence. (See, e.g., Meyer v. Whisnant, 307 N. Y. 369, mot. for rearg. den. 307 N. Y. 911; Bobbe v. Camato, 26 A D 2d 627; Allenson v. Furman, 16 A D 2d 629.) Recovery in this case does not, however, require so sweeping a conclusion, as the factual inference of plaintiff’s reasonable care under the circumstances, though perhaps thin, is adequate.
In Townley v. Bagby Transfer Co. (19 A D 2d 757), a judgment of nonsuit was reversed upon facts — a tractor-trailer moving across a busy highway—closely parallel to those in *381 the case at bar, save only that the accident there occurred at night; but here, too, there was evidence of diminished visibility (and that upon a high speed expressway) and thus the difference is only in degree, and questions of degree are by their very nature for the jury.
In sum, it could have been found, in respect of the issue of contributory negligence, that, as is conceded, there were no warnings of highway construction or of the movement of highway construction machinery; that plaintiff had the same visibility as the individual defendants — from 300 to 600 feet; that it was not unreasonable for plaintiff to fail to anticipate that he would come upon a low-lying flatbed trailer extending across the highway, 'while, on the other hand, it was highly unreasonable for Robb and McDougall (and McDougall, the flagman, in particular) to fail to anticipate and thereupon to observe and warn westbound motorists, including plaintiff; that, despite the holdings below, there was no substantial evidence of high speed and no proof of lights that the jury had to accept; that plaintiff wore his seat belt and that the collision occurred in the right, outside lane, where he was supposed to be; that he could have covered the distance from his home while driving at the legal speed of 65 and still have had time for one or more stops (and without stops, he covered perhaps as much as 250 miles in a bit over 5% hours); and he had almost two hours in which to drive the remaining 50 miles. Perhaps none of these minutiae is substantial, standing alone; cumulatively, in the light of all the circumstances, they seem sufficient to sustain the lightened burden cast upon plaintiff, and hence to warrant the jury’s verdict.
The order of the Appellate Division should be reversed, with costs in all courts, and the verdict in favor of plaintiff reinstated.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan, Breitel and Jasen concur.
Order reversed, with costs in all courts, and the case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

 Of course, the accident would not have occurred had Robb continued west to the next exit, re-entered the Thruway and proceeded east to this location.