Joseph Modugno, J.
These claims, duly and timely filed, seek to recover damages for personal injuries allegedly sustained by the claimants, who are sisters, and for loss of services and medical expenses suffered by their father and natural guardian, Francis R King.
By stipulation the trial was limited to the issue of liability.
On the evening of October 21, 1973, at approximately 8:00 p.m., while claimant Patricia King was driving a 1969 Volkswagen, with her sister, Susan King as a passenger, they were involved in an accident with another vehicle at the intersection of Route 6 and Stoneleigh Avenue in the Town of Carmel, New York. The sisters were en route to see a movie at a theater located in a shopping center situated near the above intersection.
At the time of the accident, Patricia King had been a licensed driver for less than one month. Furthermore, it is an uncontroverted fact that she had driven through a red light at the time of the collision. Under normal circumstances such an act would amount to at least contributory negligence thus barring her claim against the State; and at most her failure to stop could be interpreted as the proximate cause of the accident and accordingly also bar her sister’s claim. However, the circumstances under which this accident occurred are most unusual and out of the ordinary. At issue is the design of the traffic devices which controlled the intersection of Route 6 and Stoneleigh Avenue. The claimants contend that said devices were insufficient and inadequate for their intended purpose; that they were improperly aimed, improperly equipped and improperly located; and, therefore, confusing and misleading.
After a thorough and extensive review of the evidence, this court concurs with those contentions.
At the time of the collision traffic control at the intersection was effected through the use of three traffic heads, two of which contained two faces and the third four faces. This *750 achieved technical compliance with the Manual of Uniform Traffic Control Devices, State of New York, State Traffic Commission, as revised on August 1, 1967, where in section 272.3(b)(1) (former 15 NYCRR 272.3 [b] [1]) it is specified that two faces for each direction shall be used to achieve control of approaching traffic.
The traffic devices situated at the intersection had been installed in apparent compliance with the recommendations submitted by Mr. Joseph McGrath, in June of 1970. At that time Mr. McGrath was an employee of the State with the title of Assistant Civil Engineer. In actuality, Mr. McGrath was not a licensed professional engineer; he holds only a high school diploma; and his only experience regarding traffic device installation was gained through "on the job” training.
Mr. McGrath made his recommendations after visiting the site on three occasions. His installation plans were predicated on the assumption that vehicles proceeding on Stoneleigh Avenue toward Route 6 would be traveling at an average speed of 30-35 miles per hour. He arrived at that conclusion through his own personal observation since no radar check for actual speed was ever made of the vehicles even though the legal speed limit on Stoneleigh Avenue was 50 miles per hour.
By Mr. McGrath’s own admission, the light controlling traffic on Stoneleigh Avenue should have been placed down the throat of the intersection to facilitate its visibility for cars approaching Route 6. The throat of the intersection was determined by ascertaining the left and right curb lines of Stoneleigh Avenue as it enters Route 6. However, after Mr. McGrath’s recommendations were enacted in December, 1970, the throat at this intersection was changed in 1972 by the insertion of a traffic island. Yet, no changes were made in the positioning of the lights controlling the intersection. In fact, the 1970 installation was never inspected to see if it conformed with Mr. McGrath’s recommendations and, further, it appears that the traffic control devices were never inspected at any time after their installation.
As Stoneleigh Avenue nears Route 6, the roads run almost parallel to one another. The lights controlling traffic at the intersection were so situated at the time of the collision that a person driving along Stoneleigh Avenue toward Route 6 would see the light controlling traffic on Route 6 and would not see the signal controlling traffic on Stoneleigh Avenue until he had entered into the area of the traffic island, which created a *751 curve in the avenue some 55 feet from Route 6. Thus a driver coming along Stoneleigh Avenue toward Route 6 would be traveling under the mistaken impression that he had a green light when in actuality the light was red. In fact, the claimants produced six witnesses who all testified to the dangerous and fallacious nature of the traffic signal at the intersection in question. Jacqueline Roerhig, who had been driving for 15 years, testified that she found the intersection’s traffic lights highly confusing as did Daniel Klaff, who stated that the true signal could not be seen until a person reached the intersection.
Similar testimony was offered by Myrna Neff, Cliff Oster and Wayne Lutkenhaus. Mr. Cliff Oster, the owner and manager of a gas station near the intersection, stated that the traffic lights in that area were clearly deceptive.
However, the most dramatic, objective and compelling corroborative testimony was offered by Dr. Isabelle Uryson. Dr. Uryson had originally been subpoenaed to testify regarding the amnesia of the claimants. Prior to her departure, following that testimony, she sat in the courtroom for a few minutes and observed large photographs introduced into evidence on the side of the courtroom. She then inquired as to whether these photographs represented the scene of the accident and having been informed that they did, she volunteered to take the witness stand again to the surprise of everyone, including the claimants’ attorneys.
Dr. Uryson stated that she had been driving for many years, that she was quite familiar with the intersection and that she found the traffic lights there very confusing. In fact she even admitted to entering Route 6 from Stoneleigh Avenue against a red light under the mistaken impression that it was green.
What the court finds so disturbing and distressing is the fact that this clearly perilous condition could have been easily remedied. As pointed out by the claimants’ expert, Mr. Lawrence Lawton, long tunnel visors or louvres could have been installed so that the drivers approaching Route 6 from Stoneleigh Avenue would have only seen those signals controlling traffic on Stoneleigh Avenue. In fact, section 272.4 (e) of the Manual of Uniform Traffic Control Devices, State of New York, State Traffic Commission, as revised on August 1, 1967, reads as follows: "Each signal face shall, to the extent practicable, be so shielded by visors, louvres and/or back plates that an approaching driver can see only the indications which *752 control his movement. Special shields may be required where the angle between opposing signal indications is comparatively small.”
It would seem that the writers of the manual were aware of the type of visibility problem present at the intersection of Route 6 and Stoneleigh Avenue and specified certain actions to counteract that problem. Yet, the State never saw fit to institute the remedial actions called for.
Any reasonable analysis of the evidence adduced at trial clearly evinces negligence on the part of the State in the design of the traffic control devices at this intersection. Without any intention of downgrading the quality of Mr. Mc-Grath’s work, this court feels that the design and installation of the devices at this intersection called for professional engineering advice. Obviously due care was not exercised by the State in the preparation of the design nor in the installation of these lights since no inspection was ever made once the lights were installed to see if the installation met with the recommendations set forth by Mr. McGrath in his report.
Furthermore, the State had the continuing duty to review the control devices at the intersection to see if they were properly, safely and efficiently controlling traffic at the intersection. Had the State met that duty, the light controlling traffic on Stoneleigh Avenue would have been properly aimed when the new trafile island was built in 1972.. Instead the light remained improperly aimed up until the time of this unfortunate accident. As a result, persons traveling along Stoneleigh Avenue at a legal rate of speed would not see the correct light until they were some 55 feet from the intersection. According to Mr. Lawton’s testimony that would not give them sufficient time to stop before entering Route 6.
All of these things, when looked at cumulatively, spell out negligence on the part of the State, and this court feels that the case of Weiss v Fote (7 NY2d 579) is distinguishable. As indicated above, due care was not exhibited by the State in this instance and further, the continuing duty to review was not met. Indeed this court finds that the State, through its own negligence, created a trap and nuisance and the resulting danger was needlessly allowed to occur and exist. As stated by the Court of Appeals in Weiss v Fote (supra, p 588): "something more than a mere choice between conflicting opinions of experts is required before the State or one of its subdivisions *753 may be charged with a failure to discharge its duty to plan highways for the safety of the traveling public.”
This court feels that the requisite of additional evidence is present here. That evidence manifested itself in the testimony of the witnesses called by the claimants regarding the deceptive nature of the lights at the intersection and through the evidence establishing the inadequate planning, design and erection of said lights.
Additionally, the court was not overly impressed by the testimony of the State’s expert, Mr. Gardeski, the Regional Engineer for the Department of Transportation, because his knowledge of the intersection in question was based for the most part on reports he had read and only one visit to the said intersection a few days before the trial.
The claimants’ expert, Mr. Lawrence Lawton, on the other hand, made a thorough and complete study of the intersection and reviewed its physical characteristics and actually took most of the photographs in evidence.
He testified that his investigation revealed that the true light controlling Stoneleigh Avenue could not be seen until a driver was 55 feet from the intersection and at that time it would not be possible for a driver traveling even at 30 miles per hour to stop without entering Route 6.
He further testified that the traffic signals at the intersection were improper, that the lights were incorrectly aimed and that the Route 6 controls did not use limitating devices.
Having found the State guilty of negligence, the court must now resolve the questions of whether that negligence was the proximate cause of the accident and whether the claimant, Patricia King, was at all contributorily negligent.
Unfortunately, both claimants suffer from amnesia regarding the details of the accident. Thus this court has relied on the testimony of other witnesses and circumstantial evidence to resolve those questions. Based on the testimony of Mary Ellen Mangione, the driver of the other vehicle involved in the crash and Mr. William Goodman, an independent eyewitness to the accident, the following facts were established: that the King vehicle was traveling at a moderate and proper rate of speed substantially below the 50 miles per hour speed limit; that the King vehicle was in the proper lane of traffic on Stoneleigh Avenue; that it was traveling in a direction which one would expect a vehicle to travel if it had a *754 green light and were intending to enter the shopping center located at the intersection; and finally, that the King vehicle had proceeded through a red light.
As stated in Wartels v County Asphalt (29 NY2d 372, p 380): "First, the condition of amnesia indisputably sustained by plaintiff in consequence of the accident entitled him to recover upon a lower degree of proof than that required of a plaintiff competent to testify to the facts, that is, to succeed upon sustaining 'a lighter burden of persuasion’, as we held in Schechter v Klanfer (28 NY2d 228, 231, supra) in extending to amnesiacs the benefit of the rule of Noseworthy v City of New York(298 NY 76, supra).”
This court finds that claimants have met their lower degree of proof and have proven the State’s negligence to be the proximate cause of the accident. The only reasonable inference which can be drawn from all the evidence adduced at trial is that Patricia King drove through the red light because she mistakenly believed that she had a green light, and that mistake was caused by the State’s laxity, which amounted to a trap for the unwary driver. There is no indication of any sort that Patricia King was operating her car in an improper fashion just prior to the collision and accordingly she cannot be accused of being contributorily negligent. Clearly the State’s impropriety allowed this tragedy to occur.
The lights at the intersection should have been designed so that all drivers whether experienced or inexperienced could have safely seen the proper controlling signals. Possibly a more experienced driver would have stopped in time, but this does not mean that Miss King’s failure to do so amounted to negligence.
Unquestionably the drivers of this State possess varied driving skills. The law does not require that a person be the most skilled driver in order to be declared free of contributory negligence; it does require, however, that he act as a reasonably prudent person would under similar circumstances. Miss King drove her car in a reasonably prudent fashion, but due to the negligence of the State her reasonable actions were not sufficient to save her from the trap created by the State. In effect, a person can be an inexperienced driver and still be declared free of contributory negligence as long as he drives in a reasonably prudent fashion under the conditions encountered. Thus inexperience cannot necessarily be interpreted as contributory negligence.
*755 The design of our roadways and traffic devices should be made with a view of protecting all drivers with all their varied abilities and skills. The State cannot design roads or traffic devices which protect only the more skilled and able drivers and then disclaim liability when a less experienced driver is injured.
In conclusion the court feels that statement made by the Court of Appeals in Wartels v County Asphalt (supra, p 380) is applicable: "Second, the highly dangerous condition created by negligence in an excessive degree and posing a sudden, not to be anticipated peril, reduced plaintiffs burden of proof close to the vanishing point * * * In some cases, the situation created may be so dangerous and the negligence of the party creating it so extreme as to exclude any other proximate cause, thus vitiating acts of the other party which might under ordinary circumstances be appraised as contributory negligence.”
Accordingly, motions made by the State to dismiss these claims are denied and all other motions not otherwise disposed of hereinbefore are also denied.
Based on all the evidence adduced at the trial of both claims, the court finds (in Claim No. 58154 and Claim No. 58155) that the State was negligent in the design, construction and maintenance of the traffic lights, that said negligence was the proximate cause of the accident, and that both claimants were free from contributory negligence. The clerk of the court is hereby directed to restore both claims to an early fall calendar for the purpose of assessing damages.