■ WILLIAM NALLAN et al., Appellants, v HELMSLEY-SPEAR, INC., et al., Respondents.—In a negligence action to recover damages for personal injuries, etc., plaintiffs appeal from (1) a judgment of the Supreme Court, Nassau County, entered June 29, 1976, in favor of the defendants, after a jury trial and (2) an order of the same court, entered July 23, 1976, which denied their motion to set aside the judgment and either direct judgment in their favor or order a new trial pursuant to CPLR 4404. Judgment and order affirmed, with one bill of costs to cover both appeals. Plaintiff William Nallan (hereinafter plaintiff) commenced the instant action to recover damages for personal injuries resulting from a gunshot wound which he sustained while standing in the lobby of the defendants' building prior to attending a union meeting. The lobby attendant was, at the time, engaged in cleaning an elevator and while so occupied had neglected to lock one of the front doors of the building as he was required to do. The theory of the

plaintiff's case was that this neglect was the proximate cause of his injury. The building superintendent testified at the trial that the attendant, who was approximately 60 years old at the time of the incident, was stationed in the lobby after 6:30 P.M. for two reasons: (1) to clean the lobby and polish the elevators; and (2) to take charge of the sign-in desk which was maintained in the lobby after 7:00 P.M. The attendant's duties with regard to the sign-in desk were totally ministerial. He was merely instructed to direct all late visitors to sign in and out of the building. The avowed purpose of this procedure was to help locate the occupants of the building in the event of a fire or other emergency. At approximately 7:15 P.M., plaintiff and another member of the union whom he had met outside, one Joseph Dobbins, entered the lobby through the unlocked door and proceeded toward the elevators. Plaintiff paused at the sign-in desk and was shot almost immediately. Dobbins had gone directly to the elevator. As has already been indicated, plaintiff's theory was that his assailant had entered the lobby through the unlocked door, but in truth there was no direct evidence of this fact, as the assailant was not observed. Nor was there any circumstantial evidence from which this fact might be inferred.[1] An expert for the plaintiffs testified that the presence of an attendant in the lobby, even if unarmed, would have discouraged the criminal act. Other testimony in the case tended to show that the plaintiff had received two threats of reprisals prior to the shooting on September 30, 1969. The first threat was made in August, 1969, when plaintiff's cousin was approached in a New York City bar and told that the plaintiff would receive "the acid treatment" unless he ceased his investigation into union hiring practices. The second threat occurred some four days later when plaintiff's teenage daughter was approached near her home in Wantagh, Long Island, and was asked whether she was one of the Nallan children. Following this second incident, plaintiff reported both incidents to the Nassau County police, who briefly increased their patrols around the Nallan home as a protective measure. Plaintiff did nothing further to provide for his own safety. Based upon this evidence, the jury found the plaintiff to have been contributorily negligent with regard to the shooting, apparently adopting the defendants' suggestion that in the face of a known danger he should have notified the Manhattan police and the building management of his plans to attend the union meeting there on the evening in question, and/or traveled to the meeting with a friend or a bodyguard. We cannot agree. As a matter of law, plaintiff was not contributorily negligent. Here, more than a month had transpired between the dates of the apparent threats and the date of the shooting, and, during this entire period of time, nothing suspicious or foreboding had transpired. Thus, plaintiff had been given ample reason to conclude that the "threats" of the prior month were merely a resort to "scare tactics" and would never be carried out. His notification of the local police was therefore sufficient to discharge his duty to act reasonably to protect himself in light of the mild nature of the danger presented. The remaining question is whether judgment may still be entered for either party on the basis of this record, which includes marked inconsistencies in the special verdicts returned by the jury. We hold that it may. In answer to one of the court's questions, the jury found that the defendants should *not* have foreseen that injury to the

---

1. As the dissenter correctly observes, several men were seen fleeing from the building immediately after the shooting, but one or more of them was eventually apprehended, questioned and released. Insofar as it appears on the present record, the crime remains unsolved.

plaintiff would result from the negligence of their agent in leaving the lobby unattended while the front door was unlocked. Yet in answer to other of the court's questions the jury concluded (1) that defendants had voluntarily assumed the obligation of maintaining an attendant in the lobby after 6:30 P.M., (2) that this duty was breached by the attendant on the night in question, and (3) that the afore-stated negligence was the proximate cause of the plaintiff's injuries. It is hornbook law that if a defendant could not have *foreseen* that his negligent act would cause harm to another, there can be no liability (Prosser, Torts [4th ed], § 43, p 250). Trial Term recognized this inconsistency, but felt that it was unnecessary to have the jury resolve it, as the special finding of contributory negligence effectively barred plaintiff's claim. Had the foregoing conclusion not been reached, however, the court could have instructed the jury to "further consider its answers and verdict or it shall order a new trial" (CPLR 4111, subd [c]).[2] The jury having since been disbanded, it is now too late to require that the answers be reconsidered, and it is for this reason that a new trial would generally be in order. Here, however, the judgment in favor of the defendants may still be affirmed, as there was insufficient trial evidence to establish either foreseeability or proximate cause. In *Bernal v Pinkerton's, Inc.* (52 AD2d 760, affd 41 NY2d 938) the First Department, in a similar case, reversed the judgment and dismissed the complaint in a negligence action where the plaintiff had sued a security company (Pinkerton's) for injuries resulting from a shot fired by an intruder on the premises of his employer, the New York Telephone Company. In that case, the telephone company had specifically employed Pinkerton's to provide security for its facilities and buildings and, pursuant to contract, to "Furnish uniformed guards for * * * proper protection [that p]rotection to include prevention and detection of theft, fire, safety hazards *and the screening of personnel entering and leaving such facilities and buildings"* (emphasis supplied). Bernal claimed that he was a third-party beneficiary of his employer's contract with Pinkerton's, and that the latter was therefore liable to him for injuries caused by an intruder who allegedly entered through a gate left unguarded by the *defendant's* employee. The First Department rejected this contention on the ground, *inter alia,* that there was no clearly expressed intent to confer any direct benefit upon the plaintiff to protect him from physical injury. The court, apparently assuming, *arguendo,* a duty of care, then went on to state without qualification (p 761): "Further, it cannot be said that the absence of the guard (who, incidentally, was not required to be armed) from his station was the proximate cause of the shooting *(Rivera v City of New York,* 11 NY2d 856, 857). Nor was the incident foreseeable even were we to assume that there was an issue of affirmative negligence in this case *(Palsgraf v Long Is. R. R.,* 248 NY 339, 343-344; *Morris v Troy Sav. Bank,* 32 AD2d 237, 238, affd 28 NY2d 619)." The Court of Appeals affirmed on the memorandum at the Appellate Division (41 NY2d 938, 939, *supra),* thus explicitly adopting both grounds for reversal cited by the First Department. It is significant for present purposes that the instant case is in some ways "weaker" than the *Bernal* case, as the attendant herein was never intended to function as a security guard, but rather was posted in the lobby to perform custodial duties and, as a quasi watchman, to request visitors to sign in and out of the

---

2. Although the cited procedure is mentioned by statute only with regard to "general verdicts accompanied by answers to interrogatories," we believe that it should also be deemed applicable to situations such as those at bar involving special verdicts.

building after 7:00 P.M. The attendant himself was approximately 60 years old, wore no uniform (other than a pair of pants supplied by the management and a shirt bearing the building logo), and was unarmed. Moreover, his duties in connection with the "sign-in" desk were stated to be for the sole purpose of locating people inside the building in the event of a fire or other emergency after normal business hours. Finally, although the uncontradicted testimony of plaintiffs' security expert was to the effect that the presence of even an unarmed attendant in the lobby would have discouraged the apparent assassination attempt, an examination of his trial testimony reveals that this conclusion was predicated in large part on the assumption that the person so stationed would be a trained observer whose primary or sole function would be to maintain surveillance of the front door. Thus, it was stated: "Q. What then is needed, so to speak, to provide and to have the deterrent effect that you are describing? A. The key deterrent effect results just from the presence of a human being who is alert and is paying attention to watching people come in and seeing to it that they do whatever it is that has to be done in regard to signing in * * * They don't have to be in uniform, they don't have to be armed. Q. They have to be maintaining observation and being on duty at the entranceway, the front doors? A. Yes." clearly, the attendant's job here was not of this nature, as he was permitted (in fact, required) to leave the desk unattended for varying periods of time in order to discharge his custodial duties. Moreover, the lobby at the time of the shooting was not totally unoccupied, as plaintiff's associate, Mr. Dobbins, was also present, although his attention was apparently directed elsewhere. In addition, it is by no means certain that the attendant, even had he been in the lobby, would actually have been at the sign-in desk, as opposed to being elsewhere in the lobby engaged in one of his other assigned tasks. As a final note, it is significant that in this case it has *not* been established that the attendant's alleged prime breach of care, i.e., his failing to lock the front door when leaving the lobby, was an event of causal significance (see *Ventricelli v Kinney System Rent A Car,* 45 NY2d 950), since the plaintiff has been unable to show that his assailant entered the building through the unlocked door during the attendant's absence. On the proof adduced, he could just as easily have been secreting himself in the lobby in anticipation of the plaintiff's arrival (cf. *Sherman v Concourse Realty Corp.,* 47 AD2d 134). But even assuming plaintiff to be correct on this particular point, the affirmance of the *Bernal* case by the Court of Appeals appears to mandate an affirmance in the case at bar. Gulotta, Shapiro and Martuscello, JJ., concur.

Hopkins, J. P., dissents and votes to reverse the judgment and order and grant a new trial, with the following memorandum: Two main questions are raised by this appeal—whether the issue of contributory negligence should have been submitted to the jury, and whether the plaintiffs established a prima facie case, entitling them to go to the jury on the issues of the defendants' negligence, foreseeability, and proximate cause. 1. *The issue of contributory negligence.* The jury answered the question posed under CPLR 4111 (Question No. 6) by determining that the plaintiff William Nallen (hereinafter plaintiff) was guilty of contributory negligence. The defendants argue that the issue of contributory negligence is a question of fact exclusively for the jury (see *Wartels v County Asphalt,* 29 NY2d 372, 379; *Nelson v Nygren,* 259 NY 71, 76). Indeed, it usually is. Seldom is the court warranted in dismissing an action because the plaintiff is contributorily negligent as a matter of law *(Greelish v New York Cent. R. R. Co.,* 29 AD2d 159, 161, affd 23 NY2d 903). Nevertheless, there must be sufficient evidence

establishing as a matter of fact that the plaintiff's conduct could be found to constitute contributory negligence before that issue can be submitted to the jury (cf. *Jerry v Borden Co.,* 45 AD2d 344, 350). "It is the general rule that contributory negligence should not be charged 'if there is no or insufficient evidence to support it' (65A C. J. S., Negligence, § 293, p. 1032)" *(Willis v Young Men's Christian Assn. of Amsterdam,* 28 NY2d 375, 377-378). The defendants suggest that the threats to the plaintiff, which were of such gravity that he reported them to the police should have impelled him to protect himself as a reasonable person would have done under the circumstances. Thus it is urged that the plaintiff should have brought someone with him before entering the building where the union meeting was to be held, or that he should have advised the building personnel or the police that he was attending the meeting and needed protection. However, the evidence shows that after the plaintiff notified the police of the threats, the police informed him that no crime had been committed in Nassau (where the incidents had been reported), and in fact a crime had not been committed. Nor was the plaintiff told by the police that he should be accompanied by a bodyguard or take any other precautions when he visited the union offices. Neither does the evidence show any further threats made to the plaintiff after the police made its investigation. On the day of the incident nothing untoward made the plaintiff aware that he might encounter danger by going to the union offices in New York. To require the plaintiff to exercise the high degree of precaution suggested by the defendants in making a trip to a busy area in the center of New York's business and retail section (57th Street near Broadway) would have exacted conduct beyond reasonable bounds and would have unjustifiably curtailed the plaintiff's activities and his freedom of travel. For this reason, I would hold that the issue of contributory negligence should not have been submitted to the jury and that a new trial must be directed. 2. *Whether a prima facie case was made out against the defendants.* The jury found on the issue of the defendants' negligence that (1) the plaintiff was an invitee in the building, (2) the defendants had assumed an obligation of maintaining an attendant in the lobby, (3) the attendant was negligent in carrying out his duties, (4) the defendants were on notice that there was a likelihood that criminal acts might be committed in the building, (5) the defendants should not have foreseen that injury might result from their negligence through criminal actions by a third party, and (6) the negligence of the defendants was a proximate cause of the plaintiff's injury. With respect to the first two findings there is little or no dispute between the parties. An apparent contradiction arises between finding (5) (the lack of foreseeability) and finding (6) (the existence of proximate cause). The trial court, in deciding the motion by the plaintiffs to set aside the judgment, recognized the contradiction, but found it unnecessary to address its effect, since the trial court held that the jury's determination of contributory negligence ended the case. Foreseeability as an ingredient of negligence is necessarily embraced within the requirements of the duty undertaken by the defendants (see *Basso v Miller,* 40 NY2d 233, 241). Once the jury found that the defendants had undertaken a duty to guard against the likelihood of criminal acts generally, foreseeability of harm from a breach of duty follows *(Lillie v Thompson,* 332 US 459, 461-462). "if the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby" (Restatement, Torts 2d, § 449, p 482; see, also, § 302).

Moreover, that the immediate cause of the injury came from the act of a third party—a criminal intruder—does not prevent the defendants' negligence from being regarded in contemplation of law as the proximate cause (see *Sherman v Concourse Realty Corp.,* 47 AD2d 134, 139). The contradictions in the jury's answers to the questions propounded to it are another reason for the necessity of a new trial. The primary issue remains, however, whether the plaintiffs made out a prima facie case. On this issue, the defendants make several arguments to sustain their position that there was a failure to establish an actionable case because: (1) the defendants' conduct, at most, furnished the condition for plaintiff's injury but not the cause *(Rivera v City of New York,* 11 NY2d 856; *Sheehan v City of New York,* 40 NY2d 496; *Bolsenbroek v Tully & Di Napoli,* 12 AD2d 376); (2) the defendants did not undertake a duty of protecting the plaintiff against assassination; and (3) the plaintiffs failed to prove that the defendants' negligence allowed an intruder to enter the building—that is to say that the injury might have been committed by one in the building before the plaintiff entered. The plaintiffs proved that the defendants had hired an attendant to oversee the lobby, whose duty it was to lock the outside doors if he left the lobby, in order to keep out unauthorized visitors. The attendant was not in the lobby when the plaintiff entered, and the doors were not locked. There was evidence that numerous burglaries and robberies had occurred in the building. There was also evidence from both a police witness and an expert witness that the presence of personnel in a lobby wards off potential criminals. The expert witness also testified that the attempt at assassination would have been deterred if the attendant had been working in the lobby at the time. It is of course immaterial that the defendants did not anticipate the precise cause of injury—the attempt to assassinate. It is enough that the defendants anticipated that a danger might exist from criminal intruders, even though that danger was considered only to arise from the commission of robbery or burglary (see *Poplar v Bourjois, Inc.,* 298 NY 62, 67). Robbery and burglary are willful acts by third parties, from which physical injury can reasonably be said to be a probable consequence. A willful homicide by a third party is not outside the orbit of the probable consequence of negligence, given the foreseen risk of the occurrence of robbery or burglary (cf. *Sherman v Concourse Realty Corp.,* 47 AD2d 134, 139, *supra).* Finally, in my mind the proof was sufficient to establish that the plaintiff was shot by an unauthorized person in the lobby. He was shot in the back as he bent to sign the visitor's book on the desk in the lobby, and several men were seen running from the lobby immediately after the shooting. The plaintiff testified that the lobby was empty when he and another—Dobbin—entered the building. These circumstances provided sufficient grounds upon which the jury might fairly have found that an intruder entering the building behind the plaintiff had caused his injury. All that the plaintiffs were required to demonstrate was that the defendants' negligence was a substantial factor in bringing about the harm, as a condition to establishing legal cause (Restatement, Torts 2d, §§ 431, 433; cf. *Pagan v Goldberger,* 51 AD2d 508). Accordingly, I would reverse the judgment and order and grant a new trial.